This is our first case of the afternoon, CMS v. ILL-B, from the apartment of Mr. Weiner, the appellee Mr. Schmidt and Ms. Auerbach. You may proceed. I'd like to start by reading, by quoting from a public court opinion. The quote is, The record reveals that the Option 8Ls in the agency consist not only of six staff attorneys in the Bureau of Administrative Litigation who serve as advocates for the agency in administrative hearings, but also administrative law judges, hearing referees, and a staff attorney in the Office of General Counsel. It is difficult to surmise why these groups of attorneys are in different divisions of the agencies. The administrative law judges and hearing officers preside over administrative hearings and write recommended decisions. The staff attorney in the Office of General Counsel, quote, rules on, close quote, the recommended decisions of the administrative law judges and the exceptions thereto. While the attorneys in the Bureau of Administrative Litigation are expected to be advocates, the attorneys in the Office of General Counsel are expected to be decision makers. The integrity of the adversary system demands a rigorous segregation of those functions. That's a quote from this court's opinion. Is it in your paper? Yes. Well, what case is it? The case is State of Illinois Department of Central Management Services, State of Illinois-Illinois Labor Relations Board, 388 Illinois Ave. 3rd, 319 at pages 334 to 337. The case is cited in our brief. Who's the author? I believe it's Judge Appleton. I think I remonstrated with you the last time you were here that quoting back our own decisions to us seems unfair. And this is Deja in the words of Yogi Berra, Deja vu all over again. Here we have administrative law judges and their powers are fully set forth in our brief page after page of statutory and regulatory powers, including plainly judicial powers. To make decisions, to award relief, and even designate in the regs and the statutes what the relief that they can provide, which is all judicial relief. I mean, this is a statutorily defined position, even much more so than provisions in the state's attorney's office, which were just a general provision that they would act on behalf of the state's attorneys. Here you have an actual detailed regulations fully set. I don't want to repeat them because they're too long and take up all my time. One of your issues is you argue that it's fair to conduct an evidentiary hearing. Is that correct? Yes. What, do we just ignore the First District case, or what do we do with that? Well, I mean, obviously, I mean, you're not bound by the First District case. That case is on a petition for relief to appeal, which is presently pending, I might add to your honor. That's their position. I would respectfully submit, obviously, they've conceded that whether we had due process or what probably is more appropriate, fairness in this. Because this is just one of a plethora of recent cases where the state has denied hearings. It's almost pro forma now that we're denied hearings without any evidentiary hearing before an administrative law judge, without any right to file exceptions because there's no RDO as we call it, without any right to go to the board itself. It's administratively handled. It's just, here it's just, we find there's no issues of fact or law. It's one sentence. In this case, as others, Judge Streisand, and therefore recommend that the unit be certified as requested by the union. Period. That's it. Nothing. We really don't get a right to be heard. And that brings me to another point. In the rules of the Illinois Public Labor Relations Board, it says that if the investigation discloses that there's a reasonable cause, not that there's cause, but I mean not that we have to prove our case before we get to prove our case, but if there's a reasonable cause to believe that there are unresolved issues relating to the question of representation, the ILRB shall set the manner for hearing before an ILG. Mandatory. Shall set it. And only, a certification may only be issued on a petition, quote, where there are no unit appropriateness or exclusion, or exclusion, that's what we have here, issues or any other issues necessitating a hearing. So it was required that we have a hearing because there are issues here, both under the alternative as well as the traditional managerial tests. But particularly the alternative test, as a matter of law, you have the law here establishing that these ALJs are the agency. And why are they the agency? Because if once they have their hearing and they issue their recommended decision in order, what we call an RDO, it's final. It is the agency's ruling unless exceptions are found. So in the predominant portion of cases that you have, the ALJ's RDO is it. That is the agency's, they are the agency. Now, what happens if exceptions are found? Even there, the rules specifically provide that the commission, quote, shall adopt the hearing officer's findings effect if they are not contrary to the evidence. 775 ILCS 5-D-103P. In other words, so it comes up against the manifest weight of the evidence just like it does before this court. And there's obviously the deference that all courts and agencies give and departments give when you have that standard. So in effect, whether there's exceptions filed or not, if there's no exceptions filed, it is the decision of the agency. If there are exceptions filed, all the findings of that are deemed appropriate. Now, the only response that we get on this is, oh, wait a second, they don't formulate policy. Well, you know, that ignores two decisions of our Illinois Supreme Court. In Cook County State's attorney at 166 Illinois 2-296-301, again, this was where they ruled. They ruled even when the hearing wasn't held, just like here, they ruled that the assistant state's attorneys were as a matter of law under the alternative test. But here's what our Supreme Court says. By the way, if you look at the statute itself, it doesn't say formulating at all. But I will get to the Supreme Court here. The authority to make independent decisions and the consequent alignment of the employee's interests with management are hallmarks of a managerial status. Managerial employees must exercise discretion within or even independently of established employer policy and must be aligned with management. An employee may be excluded as managerial only if he represents management interests by taking or recommending discretionary actions that effectively control, and here's the key word, or implement employer policy, or implement conjunctive, or implement employer policy. And here they found assistants have a significant managerial role in carrying out the mission of the state's attorney's office. What do these ALJs do? They apply the Human Rights Act, whether it was discrimination or not, which brings me to another point. In doing that, they have cases where there are state employees. The state is covered under the Illinois Human Rights Act, except for elected officials and their immediate personal subordinates. So you have state employees. And by the way, 96% of the state employees are now unionized. Ninety-six percent. Based upon the pending petitions, there are now 70 pending petitions trying to get these additional high-ranking people, just like the ALJs, the SPSAs, get all the cases you're hearing. It'll be 98%. But it has a particular impact here because who's going to hear the cases? I ask, who's going to hear the cases of state employees alleging that they've been discriminated against in their employment by the state? By the state. That's the respondent in these proceedings. And how is the ALJ going to maintain a loyalty to her or his union? And part of these are these above-employment situations. Many of them employ interpretations and certainly discipline and terminations under the collective bargaining agreement, the AFSCME collective bargaining agreement, the same collective bargaining agreement, that if this court affirms the decision of the board is going to be included within that unit, the ALJ, it's a clear question of divided loyalties. Let me go further. Our Supreme Court, in that role, an assistant attorney is called upon to take numerous discretionary actions that affect, effectively control, or implement a court policy. Twice they mention that. The same thing, the Supreme Court in a chief judge case, which is, as we refer to it, as the assistant public defender case, 178 Illinois 2nd, 333. Here, the assistant public defenders act as officers for the performance of the general duties of the public defender's office, exercise some portion of the sovereign power of the state, and perform acts that are generally regarded as acts of the public defender. The assistant public defenders possess significant authority and discretion to discharge the mission of the public defender's office. In effect, they act as surrogates for the public defender. They act on behalf of the public defender in carrying out the statutory duties of the public defender's office, and they retain broad authority to act on behalf of the public defender. Exactly our case. Now, going back to your point on the hearing itself, this is important for two reasons. One is the standard of review. They concede that it's… Which is what? I respectfully submit that what happened here and what's happening in all the cases is really a summary… It's equivalent to a summary judgment or even a granting of a motion to dismiss. But even at best, it's a summary decision without a hearing, without evidence being presented. I respectfully submit that Your Honor should consider… I suggest that Your Honor should consider where that happens. Apply the same standard that is always applied to summary decisions, summary judgment decisions, and that is it's a de novo standard. You look at the entire record, you make a decision on the de novo standard. That's what should be happening when this happens in a case of this nature. But we also have the fairness issue that should concededly have a de novo review. So, basically, you have the… These people are judges and their decisions are the decisions. They implement the policy of the Human Rights Commission and they apply the Illinois Human Rights Act, the law of the… Are we talking about due process or are we talking about… We're not talking about due process. Well, two of the cases define it as due process. Is that applied to the parties involved in this? We've cited the Niles case and there was one other case we cited where they characterized it as due process. Now, the Attorney General has said, well, it's really not due process because the state can't be deprived of due process. I don't know if that's necessarily true or not. I couldn't find any precedent regarding it, but it doesn't matter whether you… The case is referred to as due process and I'll rely upon them. I acknowledge that the Assistant Attorney General has a good point, but that only leads us to whether it was fair or not. It was a fair application and probably under a clearly erroneous standard, but de novo review as to whether we were entitled to a fair hearing. What precise relief are you requesting from this Court? Well, I think this… I think this Court has the ability, as the Supreme Court did in State's Attorney, to say, look, we've looked at the statute, we've looked at the regulations, and we believe that these people are managerial as a matter of law. I think it has that power and that ability. But we were denied a hearing in this matter, and obviously that means that the unions were denied a hearing as well. So ordinarily I would say that the more appropriate course would probably be to remand the matter back to the Board to give us the hearing that we believe we were entitled to. A hearing on the alternative test or the traditional or both? I think you have everything as a matter of law on the alternative test. I think everything is in the record on that. But I do think that there could be a hearing on a traditional test if you felt that that was an appropriate matter for hearing. So you think it would be unwise for this Court to remand for a hearing on the alternative test? Well, it's not unwise. I think you have not only the statutes and regulations, but you have everybody's arguments, including the Attorney General's arguments, including a distinguished counsel's arguments for AFSCME. Everybody's been represented before this Court, all the parties are represented before this Court, on the alternative test as a matter of law. I think you could make that determination on this record. Alternatively, you could remand for a hearing on the traditional test. I do think you should read the Supreme Court's – one opportunity you have here is to determine what the standard of review is and what should happen in cases where an employer is being denied hearings summarily, even when they present substantial amounts of fact. You're going to be getting a case like 1,200 employees for five boxes of evidence, as to all but maybe 40 of those employees. Same thing, there's no basis for, in fact, a lawful hearing or some analysis there. You'll be getting that case. 1,200 people more that the ILRB has included. So we'll be up to about 98 percent unionized, which actually poses a severe operational problem. Who's going to hear these cases? Who's going to run the state? Who's going to hire? Who's going to fire? Who's going to evaluate? Who's going to transfer? Who's going to approve overtime? I mean, who's going to direct these employees? All supervisory functions. Who's going to make these managerial decisions? Where are the loyalties going to be aligned? This is a serious conundrum that we have here in the state. And we look to this court, the state looks to this court, to draw the line. Somebody's somewhere got to draw the line. And the problem we have is that all these definitions from this board have now been extended. So now they have to formulate the policy. But that's not what the Act says, and that's not what our Supreme Court says, but that's what the ILRB says. And in each of the areas, you know, supervising only needs one of the activities. But you can never win because there's always just like a maze. And you're always, whether it's if it's managerial, if you have to formulate the policies and be the final formulator of the policies, which is now what the ILRB is beginning to hold. Well, who's going to be the final authority? The division agency head, you know? I mean, or maybe the governor. I don't know. Who's the final authority on most of these things? Same with supervisory. Once you establish one of the duties, then you have to exercise independent judgment. But the independent judgment, if it's, you know, related to somebody gets a chance to look at it, then it's not independent anymore. Even if you discuss it beforehand, it's not independent anymore. I mean, if each of the areas have been, I believe, improperly, illegally expanded to include everybody, everybody, even if you get independent judgment, it's not, you don't do it a preponderance of your time. Even though in defining preponderance, the Supreme Court does have, you know, you have to have the, it's just a preponderance and not a majority as well as being just a, all of the supervisory. The authority, the authority, and then all the supervisory activity together, that's no longer recognized. So we lose every case, almost every case. Very few cases that I can recall even that we've, even where a hearing has like been granted. Thank you. We'll hear from you on this one. Thank you, Your Honor. Good afternoon, Your Honors. John Schmidt on behalf of the Illinois Labor Relations Board. I'm dividing time with Ms. Auerbach, who represents AFSCME, Council 31. Your Honors, every case isn't before this court right now. What's before this court is one case involving six administrative law judges. And in, I wanted to mention the City of Chicago case. Mr. Weiner said the PLA is still pending. It was denied at the end of March. So that PLA is no longer pending. And that case is good law. Your Honors, Mr. Weiner seems to be emphasizing the managerial as a matter of law test. And that's a test that the Supreme Court stated in both the State's Attorney case and the Chief Judge case involving public defenders should be given a narrow interpretation. He is asking for a very, very broad interpretation beyond the unique circumstances of those cases where Assistant State's Attorneys and public defenders were, in the words of the Supreme Court, acting as surrogates for the State's Attorney or the public defender and were clothed with all powers and privileges of those offices. We simply don't have that situation here. Administrative law judges are not clothed with all the powers and privileges of the Human Rights Commission. Their decisions may often end up being adopted. But most of those decisions are subject to review by three member commission panels and sometimes by the commission itself. And sometimes the three member panels choose not to follow those decisions. So in this, you have a situation here where there are statutes explicitly indicating that these ALJs do not have the full authority of commissioners. And there's an important area that the commission is involved in. And that is reviewing determinations of the Department of Human Rights to dismiss cases out of hand for lack of substantial evidence, to dismiss discrimination charges for lack of substantial evidence. Those decisions are reviewed by three member commission panels. The ALJs have no role at all. So... They make a recommendation. The ALJs, no. I don't believe in those cases that they have. The ones that the DHR dismisses, I don't think the ALJs even get involved. They do preside over hearings. And we agree they perform an important function. But they are not surrogates for the commission. A reading of the statute makes it clear they cannot act on, they are not the commission in most instances, which brings us to the managerial as a matter of... Well, how about those instances where they are actually the commission? Aren't there a couple of... There are two, Your Honor. One is if the parties agree beforehand that they will be bound by the ALJ decision. The other is if there are no exceptions. But I believe that is still distinguishable from the situation involving the state's attorneys, where, again, the Supreme Court said they are clothed with all powers and privileges of the state's attorney. The state's attorney and public defender situations are very unique. In many, if not most, instances, the ALJs cannot by themselves speak for the commission. They do not have... But the fact that they can in some instances, doesn't that defeat your argument? No, it does not. It does not, because in the state's attorney case, they were able to fully speak for the state's attorney in all instances when they went to court. And the Supreme Court used the language, closed with all powers and privileges. And these ALJs simply are not clothed with that kind of authority. So I think then we have to turn to the managerial as a matter of fact test. And in connection... Oh, I will just say one thing more on the alternate test, Your Honor. Your Honor asked, well, should this... If we agree with the alternate test, should it go back to the board? If... Your Honor, if you ruled that they were, these ALJs were managerial as a matter of law, that really takes the case away from the board. In the state's attorney's case, that was a case that was brought to prohibit the board from proceeding further in its hearing. And the Supreme Court said, yes, it was proper to prohibit the board from proceeding further. So if you do hold that they're managers as a matter of law, that's it. We would have... There would be nothing for the board to do. In terms of the traditional test, under the board's regular... So we couldn't hold it? The board should make that determination before we entertain it? Not managerial as a matter of law. In the state's attorney's case, the Supreme Court made it. The board wanted to hold a fact hearing in that case to determine what the facts were. And the court said, no, because of this unique situation where the state's attorneys are surrogates, assistant state's attorneys are surrogates, there's no need to develop a factual record. So if you held that way with the ALJs, and we don't think you should, but if you did, there would be no reason to send it back to the board. And I want it to be up front with the court about that. But the board could also make that determination if it wanted to in the first instance? It could, that's correct. The ALJ could conduct a hearing and could recommend or not, whatever, and say, these guys are managerial under both tests. And the board could act on that. That would be possible. I'm not saying that's likely, but it's possible. But that would be, you're right, Your Honor, that would be a possibility. But in moving on to the traditional test, under the board's regulations, when this petition for representation was filed, CMS was required to make some showing that these ALJs were managers as a matter of fact. And really all it did in its position statement and then its response to the rule to show cause, was to say they are involved in the decision-making process of the Human Rights Commission. And certainly that's true. Certainly they play an important role. That doesn't mean they're managing the Human Rights Commission, though. What the board looks to, and what this court has said the board should look to, is really whether they are involved in running the enterprise. One quote from the CMS case that Mr. Weiner quoted from is, managerial employees are involved in the direction of a major governmental enterprise or a unit thereof. In the County of Cook case that we cite in our brief, the court said attending patient care activities, referring to attending doctors, do nothing to, quote, run their department to set the department's goals to establish and effectuate policies and procedures to determine hours, wages, and schedules, or to create budgets. And I think that's where CMS, they failed to really submit any materials indicating that the ALJs have a role in running the department. What they said, what they did submit materials showing is that they have an important role. But this court and the court in the County of Cook case both emphasized that's not enough. There are non-managerial employees who have very vital functions, and those vital functions do not make them managerial. And I could give examples of the attending physicians in the County of Cook case are a great example. They treat patients. That's what a county hospital is all about. It's their most vital function, and yet they are non-managerial employees. Other examples that I could give might be correctional officers in prison facilities. They perform one of the most vital functions that a prison has. They're not managers of the prison, though. Another example might be Department of Children and Family Services case workers. Again. You want to take up your associates' time? I'm going to finish very soon, Your Honor. Your time is up. I understand. I'll just make one more point. Mr. Weiner was... Apparently you didn't understand. Your time is up. Oh, I'm sorry, Your Honor. Then I'll sit down and just ask the Court to affirm the Board's decision. Thank you. May it please the Court. I'm Melissa Auerbach. I represent Caspi. The Labor Act includes professional employees in the class of employees entitled to bargaining rights, and those are employees engaged in work predominantly intellectual and varying character involving a consistent exercise of discretion and adjustment in its performance. Consistent exercise of discretion. And professional employees are entitled to collective bargaining rights. The public employee definition of the Act only excludes one class of administrative hearing officer type ALJ employees, and those are employees of the Labor Board itself. Those are excluded in the public employee definition. In this case, CMS is in fact asking this Court to broadly expand the exclusion, the narrow exclusion the Supreme Court found for assistant state's attorneys and public defenders to exclude all administrative agency hearing officers and administrative law judges. And there is no such exclusion in the Act. That would be a job for the legislature, not for this Court, to essentially write a new exclusion into the statute. These employees are not judges. They're not part of the judicial branch. They're administrative agency ALJs or some agencies called hearing officers. And administrative hearing officers have been represented for collective bargaining purposes in this state, in a number of agencies, whether called hearing officers or ALJs. In the past, they've been represented in federal agencies. Indeed, the National Labor Relations Board board agents are represented by a union and continue to hear cases involving unionization of employees. There are limited cases in the state's attorney and the public defender where they found, the Court found... You said administrative hearing officers are considered non-managerial. Do you have cases that say that? I'm saying that there are employees being represented in those. And there are board cases finding employees. There was a Department of Revenue case where employees were found not to be... It might be cited in my brief on page 7. There was a hearing before the board finding attorneys to be non-managerial. Attorneys that were serving as administrative hearing officers? Yes, prior to this case, there were administrative law judges. I think in professional financial regulation that are represented for purpose of collective bargaining. There are some that are called hearing referees in the Department of Employment Security that are represented for purpose of collective bargaining long before these cases came up. Employees have been being represented in the state for purpose of collective bargaining for administrative ALJs and hearing officers. I think in the record, the certification shows that there was an ALJ position certified back in around 2004. That would probably be either at revenue or professional financial regulation. So they've been represented for six years now. And there's no exclusion in the statute, or broad exclusion for all administrative agency attorneys acting as hearing officers or administrative law judges. These employees are not managing the agencies. They're functioning as professional attorneys whose job is to hear cases. The council cited the prior court decision of this district referring to the separation between litigators and ALJs, but that decision didn't deal with whether the ALJs had the right to collective bargaining or not. It wasn't an issue in that case. Segregation of legal functions for professional, legal, and ethical purposes is a separate issue from whether employees have the right to engage in collective bargaining, regardless of which function they carry out. And a wholesale exclusion of all administrative law judges or hearing officers does not exist in this statute. And if CMS thinks there should be such an exclusion, it should approach the legislature about writing one into the statute. How about the reverse? Should all ALJs except those specifically excluded by the statute? They should be represented if they want to be. If they don't fall within any of the other statutory exclusions, which in this case CMS argued the managerial as a matter of fact exclusion, it didn't argue because they don't supervise anybody and don't have any subordinates, but it did argue the managerial as a matter of fact exclusion. And counsel said that the board has been broadening the statutory test, but in fact that's not the case. There are three appellate court cases cited on page 20 in my brief, Village of Elk Grove Village, City of Evanston, Chief Judge of the 18th Judicial Circuit, and all of which the appellate court said that to be managerial under the Act, employees have to have substantial discretion to determine how and to what extent policies will be implemented and have authority to oversee and direct that implementation. So administrative law judges who are carrying out the function of hearing human rights charges and applying the law and determining whether there has been a violation of a particular case are not directing the effectuation of management policy in the agency. They're carrying out the policy and carrying out laws and regulations, but they're not making policy. Are there ALJs who are not excluded by statute who are managerial? Well, that would be a fact-based test. I don't know. So every administrative law judge is different. It depends upon the agency that they work for and the duties that they're assigned. I think that's correct, Your Honor. I think it would depend on how the agency is set up and what duties are being performed. And maybe in some agency one may be and one may not be, and just as any other type of public employee, it would be a fact-based test. But the intent of the Managerial Exclusion in the Act is narrow, and it's to have top layers of people running an agency. And you have a commission and you have judges, administrative law judges, hearing cases, and that's the function of that agency. They're not making the policy in that agency. They don't have the authority to do that. Yeah, but there are a couple instances, and I went over this with counsel, where they are the commission because their word is the final word. And your argument is that doesn't make any difference. That doesn't mean that they're managing the agency. The fact that they may write a legal decision, which either by agreement of the parties or because nobody seeks review stands as the final administrative decision in that case. Well, maybe I don't understand what management of an agency is when they're speaking for the agency solely and exclusively, where there is no place else for the parties to go for a different consideration. That kind of sounds like, to me, to be managerial. No, managerial would be how this agency is structured, how cases are writing new policies of how we're going to decide cases, but not carrying out the function of hearing cases. That's a professional employee's job. Who would be managerial? Give me an example. Just one or two people in the entire agency? Well, I think it depends on the agency and who's running the agency. I don't know at the Human Rights Commission who is managerial. Is it ultimately just one person responsible for an agency? I think it would depend on how the agency is run and who's deciding who's writing policies for the agency. If the agency isn't run the way, for example, the governor wants it run, can that be changed? We're going to start doing things differently at the agency? Can it be changed by the agency? Can the policies be changed? I guess that would depend on what powers the agency has and the people running the agency. That's what I'm asking. What powers does the agency have? Do they answer? Does the agency answer to anyone? This agency, Human Rights Commission, carries out statutory duties of hearing cases, and they're appointed commissioners. They have employees at the commission who hear cases, at the Human Rights Department who investigate cases. These are public employees. Throughout Illinois government there are lots and lots of people who are hearing administrative cases, and that's a professional attorney function that they carry out. Council says that a large percentage of employees are organized in the state, as though all that's left are people who shouldn't be in a union, but maybe that's just because they haven't sought a union before, not because they were statutorily excluded. Thank you. Thank you. Mr. Wyatt? Well, I'm glad that Council, Ms. Auerbach, conceded that they don't have to formulate the policies, they just implement the policies, and that's the whole point here. That's what's happening with the ALJs. The Human Rights Act created two distinct branches. One was an investigatory branch, as you know, called the Illinois Department of Human Rights, and the other one was a hearing body called the Human Rights Commission, and that's its function. Its function is to hear cases that either have been filed as complaints by the individual or has been a complaint issued by the Department of Human Rights. It goes over to a judicial body called the Human Rights Commission. That's its function. That's its mission, and these people, as Your Honor pointed out, these people, these ALJs, they fulfill that mission, and I don't have the statistics on it, but it would be interesting to get the percentage of our recommended decisions that are not accepted from, and even more importantly, when they're accepted, the affirming of those decisions, because I think that would be over 90 percent, just based upon my general awareness of it, that over 90 percent, if not more, of these decisions entered by the Ministry of Lodgings are either not accepted to and or affirmed. So that's its mission. They perform its mission. They also, as there's been nothing said about the conflicting loyalties, which Your Honor, you know, which your colleague has mentioned, is being, you know, mutually exclusive. I mean, you have to have, as a judge, you have to have an undivided loyalty, and if you're an administrative law judge and you're hearing a discrimination in employment case against the State of and that they didn't follow the collective bargaining agreement, that you are also subject to. By the way, I want to dispose of this professional argument, because you can have a professional union, union members, under the Act, but that's not what's happening in any of these cases. They're putting them in the RC-10 unit, the general unit for all the employees. So they'll be ruling on cases involving collective bargaining agreements, involving discrimination against the State for employees of the State that are members of the same bargaining unit. How about counsel's argument that you need to go across the street if you want this particular issue addressed, and that it's up to the legislature to spell out who is and who is not managerial? I think that we have, in section 5, ILCS 315-3J, it defines a managerial employee. It means an individual who is engaged predominantly in executive and management functions and is charged with the responsibility of directing the effectuation of management policies and practices. To characterize these judges that they must be a deputy director of an agency, I mean, it's apples and oranges. These people direct the effectuation of management policies. We have a statute that says that. The trouble is that the ILRB has expanded that to include the formulation and adoption. Any employee that uses any discretion at all would fit under that statute. Because if I work as a driver's license examiner at the counter, I decide whether you get your driver's license based upon how I evaluate your test, your vision, your cooperation, and if I'm the guy that takes you out in the car, I have ultimate discretion on whether or not you pass. And that is effectuating the policy of the Secretary of State and the state law to only have safe drivers on the highway. But it's not who is engaged predominantly in executive and management functions. So it is predominantly. If 90% of my work is evaluating drivers, I'm more important than the manager of that driver's license examining station because I'm the front-line person who is implementing the state's policy. And I have an inordinate amount of discretion in saying, you made a lousy turn, you don't get your driver's license. Well, I think the Supreme Court has pretty much defined it in two cases as being of a higher level managerial, traditional managerial or executive responsibility. The word traditional isn't in the statute. No, it is not in the statute. But I'm saying a proper interpretation as interpreted by the Supreme Court and applied by the Supreme Court should render a decision, members of the jury, a decision in our favor. Thank you. Thank you. We'll take this matter under advisory. Thank you.